STATE OF WEST VIRGINIA *ex rel.* HARVEY C. TAYLOR *and* STATE OF WEST VIRGINIA *ex rel.* EDGAR B. SIMS *v.* E. V. TOWNSHEND *et al.*

(Nos. 9636-9636A)

Submitted April 25, 1945. Decided July 10, 1945.

*Ira J. Partlow,* Acting Attorney General, and *W. Bryan Spillers,* Assistant Attorney General, for plaintiffs in error.

*Okey P. Keadle, Daniel Dawson, Campbell & McNeer* and *L. E. Woods, Jr.,* for defendants in error.

LOVINS, PRESIDENT:

The State of West Virginia at the relation of Edgar B. Sims, Auditor of said State, hereinafter sometimes referred to as "the auditor", and Harvey C. Taylor, Sheriff of Cabell County, West Virginia, respectively instituted separate actions by way of notice of motion against E. V. Townshend and Globe Indemnity Company, surety on Townshend's bond as commissioner of school lands; the same bond and facts being involved in both actions, they were tried together. A trial by jury was waived and the trial court, after hearing the evidence, found for defendants in each action as shown by the court's written opinion made a part of the record. Upon the findings so

made, the court rendered a judgment of *nil capiat* in the case of State *ex rel.* Sims against Townshend, *et al;* but the record does not disclose that any judgment was rendered in the case of State *ex rel.* Taylor against Townshend, *et al.* On joint petition of the plaintiffs writs of error were granted.

In the year 1929 the Circuit Court of Cabell County reappointed Townshend as commissioner of school lands for a term of four years. He entered into a bond as such commissioner, with two personal sureties thereon.

Prior to June 5, 1930, all money received by Townshend was deposited in The First Huntington National Bank, but on that date the sum of $5,000.00 was withdrawn from said bank and deposited in the Union Bank & Trust Company. The latter bank was closed and placed in receivership on January 30, 1931, and the deposit therein by Townshend was impounded. After the bank was closed Townshend made periodic reports, but did not set forth in said reports that the sum of $5,000.00 had been deposited in Union Bank & Trust Company. However, the amounts shown by his reports to be due the State and its political subdivisions were disbursed from collections made between the close of the periods for which the reports were made and the dates of the several reports. In his report of money received from May, 1932, to May, 1933, Townshend reported the status of the $5,000.00 deposit. By Section 4, Chapter 49, Acts of the Legislature, 1931, a corporate surety was required on bonds given by commissioners of school lands, and on June 5, 1931, Townshend complied with such act by procuring the defendant, Globe Indemnity Company, to execute such bond as his surety. The bond was conditioned in part that the principal would deposit in one or more banks in Cabell County, West Virginia, all money received by him as such commissioner of school lands. The functions of commissioner of school lands having been discontinued by Section 4, Chapter 18, Acts of the Legislature, First Extraordinary Session, 1933, the auditor, one of the relators, by letter dated January 11, 1936, requested Townshend to make immediate and final settlement of

his accounts. The auditor suggested in his letter to Townshend that the settlement of the accounts of the latter be referred to a special commissioner to be appointed by the circuit court, and when a settlement should be completed by the special commissioner that a copy of the report be furnished to the office of the auditor at least fifteen days prior to presentation thereof to the court for confirmation. On February 7, 1936, a special commissioner was appointed by the Circuit Court of Cabell County to settle, state and report the accounts of Townshend as commissioner of school lands. The special commissioner was directed by the court to give fifteen days' notice by mail to the auditor upon completion of his report and before filing the same. The report was completed on March 17, 1936, and on March 23, 1936, the notice required by the order, together with a copy of the report of said special commissioner, was mailed to the auditor. On April 23, 1936, prior to the confirmation of the report, a copy of the proposed order of confirmation was mailed to the auditor, and he was advised that the order of confirmation would be tendered for entry on the first day of the May, 1936, Term of the Circuit Court of Cabell County. On the first day of the May, 1936, Term of the Circuit Court of Cabell County, no appearance having been made or exception filed by the auditor, an order was entered by that court approving and confirming the report of the special commissioner. The special commissioner's report showed that Townshend had funds in his hands as commissioner of school lands, and he was directed by the court to disburse said sums to the State and its political subdivisions in accordance with the report of the special commissioner. Townshend having made such disbursements, on July 9, 1936, reported that fact, exhibited his vouchers, and the Circuit Court of Cabell County on that date entered a decree, including a finding by the court, that he had fully accounted for and paid over all money in his hands as commissioner of school lands, and decreed that the liability of Townshend and the surety on his bond be terminated. After the termination of liability on the bond, sums aggregating

two thousand dollars were paid Townshend by the receiver of Union Bank & Trust Company, and the money so paid to him was disbursed to the persons entitled thereto as directed by the Circuit Court of Cabell County. These actions were commenced after demand was made by the auditor for payment of the said sum of $5,000.00, less the aforesaid credit.

Plaintiffs contend that final settlement of Townshend's accounts and the termination of his liability, as well as that of his surety, were administrative acts of the Circuit Court of Cabell County, made *ex parte,* and do not bar the prosecution of these actions; that defendant Townshend being the custodian of public moneys is a debtor and the insurer of payment thereof to the State and its political subdivisions; that the trial court erred in failing to so hold; and that the court was in error in finding that the liability of defendants here asserted had been formerly adjudicated.

Defendants take the position that no condition of the bond here sued on has been broken; that the decree of the circuit court terminating the liability of Townshend and his surety on his bond is a final decree and cannot be attacked collaterally; and that the claims of the plaintiffs are barred by the statute of limitations.

The record does not disclose that the two actions were consolidated for hearing by a formal order, although the presiding judge announced that they would be heard together. The opinion of the circuit court, which is a part of the record, indicates that the trial court heard and considered the two actions together, and made findings of fact applicable to both; but we find no order showing that a judgment was rendered in State *ex rel.* Taylor v. Townshend, *et al.* A writ of error does not lie where a final judgment has not been rendered by the trial court. *Hannah* v. *Bank,* 53 W. Va. 82, 44 S. E. 152; *DeArmit* v. *Town of Whitmer,* 63 W. Va. 300, 60 S. E. 136; *Ritchie County Bank* v. *Bee, et al.,* 60 W. Va. 386, 55 S. E. 380; *Epstein* v. *Totten,* 63 W. Va. 602, 60 S. E. 614; *Bower* v. *Virginian Railway Co.,* 68 W. Va. 629, 70 S. E. 369; *Baker* v. *Gaskins,* 124 W. Va. 69, 19 S. E. 2d 92. The writ of error

822

in the case of State *ex rel.* Harvey C. Taylor v. Towns-hend, *et al.,* is dismissed as improvidently awarded.

As indicated above, the case of State *ex rel.* Sims v. Townshend, *et al.,* was formally disposed of by rendition of a judgment of *nil capiat.* The disposition of this case depends on whether the settlement of the accounts of the commissioner of school lands approved at the May, 1936, Term of the Circuit Court of Cabell County and the decree of July 9, 1936, terminating the liability of Townshend and his surety preclude recovery in this action.

Under a former statute it was held that a proceeding to sell land forfeited to the State for nonpayment of taxes was *ex parte* and administrative in its nature. *McClure* v. *Maitland,* 24 W. Va. 561; *Auvil* v. *Iaeger,* 24 W. Va. 583; *McClure* v. *Mauperture,* 29 W. Va. 633, 2 S. E. 761. But for many years this Court, in applying a later statute, has held that a proceeding for the sale of forfeited lands for the benefit of the school fund is a judicial proceeding. *Hays, Com'r.* v. *Camden's Heirs,* 38 W. Va. 109, 18 S. E. 461; *Starr* v. *Sampselle,* 55 W. Va. 442, 47 S. E. 255; *James Sons Co.* v. *Hutchinson,* 79 W. Va. 389, 90 S. E. 1047; *Sims* v. *Fisher,* 125 W. Va. 512, 532, 25 S. E. 2d 216.

Townshend received no money as commissioner of school lands other than the money paid him for lands either sold or redeemed as the result of a suit pending in the Circuit Court of Cabell County. The sale and redemption of such lands was a part of the judicial proceeding. The money derived from redemptions and sales in the suits brought by him and from that source only was to be accounted for under the supervision of the circuit court. A necessary corollary of that accounting was the determination of the liability of the commissioner of school lands. Plaintiffs invoke the principle stated in *Town of Cameron* v. *Hicks,* 65 W. Va. 484, 64 S. E. 832, wherein it was held that the custodian of public money is liable as a debtor and insurer of payment, and that the loss of funds by bank failure does not relieve such custodian from liability regardless

of the care and prudence he may have exercised. That principle was reiterated, approved and applied in the case of *County Court* v. *Williams,* 115 W. Va. 204, 174 S. E. 873. There is a division of authority as to such liability. It is held by some courts that a custodian of public funds is exonerated when he exercises ordinary care and prudence in the selection of a depository. For a comparison and statement of the various holdings, see Note 93 A. L. R. 819 But this principle is too firmly imbedded in the juris- prudence of this State to be disturbed and we adhere to the former decisions of this Court in *Town of Cameron* v *Hicks, supra,* and *County Court* v. *Williams, supra.*

On settlement of Townshend's accounts, the plaintiff in this action could have invoked that principle in opposition to the decrees of the Circuit Court of Cabell County, wherein Townshend was given credit for the money de- posited in Union Bank & Trust Company. The State did not, nor did any officer thereof, except to the report of the special commissioner, nor was any objection made to the confirmation thereof. Upon timely exception and objec- tion, the Circuit Court of Cabell County could, and no doubt would, have considered and passed on the question of Townshend's liability for the money in the closed bank. If the entry of the decrees by the Circuit Court of Cabell County approving and confirming the settlement of Townshend's accounts and terminating liability on the bond was a proper exercise of jurisdiction, such decrees have become final.

There is a singular lack of decided cases on the question presented here. Under Section 14, Chapter 105, Code, 1923, a commissioner of school lands was required to make an itemized report to the circuit court of his county show- ing his receipts and disbursements for the preceding year, and when such report was made the statute required that it be referred to a special commissioner appointed by the court for the purpose of settling, stating and reporting such account in the same manner as accounts are settled and stated in other cases. It was further provided that upon confirmation of the report of said special commis-

sioner, it was the duty of the clerk of the court to forward a certified copy of the report and of the order confirming same to the auditor. The statute in substantially the same form was incorporated in the Official Code of 1931, as Code, 37-3-26, which was amended by Chapter 49, Acts of the Legislature, 1931. The enactment of 1931 omitted the requirement of reference to a special commissioner and confirmation by the court, but provided that the commissioner of school lands should certify the original of his report to the auditor, file a certified copy with the clerk of the county court, and a certified copy with the circuit court at its first regular term after the report was made. Section 26, Chapter 49, Acts of the Legislature, 1931. The office of commissioner of school lands was abolished by Section 4, Chapter 18, Acts of the Legislature, First Extraordinary Session, 1933. In lieu thereof the office of state commissioner of forfeited lands was established, and the auditor was designated as *ex officio* such commissioner. The administrative duties relating to waste and unappropriated, escheated, delinquent and forfeited lands were transferred to the commissioner of forfeited lands. The commissioners of school lands were required to continue their functions with relation to all tracts previously certified to them, as provided by law at the time of that enactment, to settle their accounts and to make disposition of matters in their hands on or before December 31, 1933, and again within sixty days after December 31, 1935. It was further provided by Section 4, Chapter 18, aforesaid, that "* * * the court shall make such allowance for the work done and services rendered by them and their attorneys as the court shall determine to be proper and right. The court may, by order entered of record, retain, in suits which shall be pending when this act becomes effective, such tracts and parcels of land as to which it shall appear to the court to be proper to be disposed of in such suits, * * *". The act of 1933 also provides that the commissioner of forfeited lands might request the state tax commissioner to audit the accounts of commissioners of school lands.

The enactment of 1933 did not divest the Circuit Court of Cabell County of its jurisdiction to settle the accounts of its commissioner of school lands with relation to money derived from suits theretofore brought in said court to sell forfeited and delinquent lands. The settlement of the accounts of outgoing commissioners of school lands was a necessary part of the disposition of a pending suit.

The power of the court to settle Townshend's accounts is confirmed by the following provision: "All lands forfeited and in the hands of school land commissioners of the several counties and not finally disposed of prior to the time this act becomes effective shall be administered according to the provisions of article three, chapter thirty-seven of the code, and the amendments thereto, as provided in chapter forty-nine of the acts of one thousand nine hundred thirty-one, or as otherwise provided by law. All lands subsequently forfeited shall be administered according to the provisions of this act." Chapter 18, Section 39, Acts of the Legislature, First Extraordinary Session, 1933. We are mindful of the enactment of Chapter 117, Acts of the Legislature, 1941, which repealed Code, 37-3, as amended, but that repeal did not affect the decrees of the Circuit Court of Cabell County entered in the year 1936. Even if it could be said that the enactments of 1931 and 1933 deprived the circuit court of jurisdiction to settle the accounts of commissioners of school lands, it is provided in another statute that the accounts of all persons who have money subject to the future order of the court may be settled by reference to a commissioner in chancery, unless otherwise provided. Code, 51-6-10. Undoubtedly, Townshend had money in his hands, subject to the future order of the Circuit Court of Cabell County, and therefore Code, 51-6-10, is a valid basis for the exercise of jurisdiction in the settlement of his accounts.

We conclude that the Circuit Court of Cabell County in effecting the settlement between the State, its political subdivisions and the defendant Townshend had authority and complete jurisdiction to approve and confirm such settlement and to terminate the liability of Townshend

and his surety on the bond; and though the court may have erred in entering such decrees, no appeal having been taken therefrom, they are now final and binding on the plaintiff.

What has been said fully disposes of this case, and it is unnecessary to discuss other contentions of plaintiff and defendants.

For reasons herein stated, we dismiss the writ of error in the case of State *ex rel.* Harvey C. Taylor v. Townshend, *et al.;* and affirm the judgment of the Circuit Court of Cabell County in the case of State *ex rel.* Edgar B. Sims v. Townshend, *et al.*

> *Writ of error dismissed as improvidently awarded in one case; judgment affirmed in the other.*